BRUCE G. M. DIESEL, INC., PLAINTIFF, v. ASSOCIATES FINANCIAL SERVICES CO., INC. AND WILLIE J. BROWN, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 17, 1972.

*Messrs. Winne & Banta,* attorneys for plaintiff.

*Messrs. Kramer & Kramer,* attorneys for defendant Associates Financial Services Co., Inc.

TOSCANO, J. C. C. This action was brought by plaintiff Bruce G. M. Diesel, Inc., to enforce a common law artisan's

lien on a certain truck for the value of repairs made on said truck.

The parties have stipulated the facts to be that on July 7, 1969 Willie J. Brown, as debtor, executed a security agreement in favor of Associates Financial Services Co., Inc. (Associates) as secured party, on a 1966 International truck. On August 8, 1969 a motor vehicle certificate of ownership was issued by the New Jersey Division of Motor Vehicles showing ownership of the truck in Brown, subject to the lien of the secured party, Associates. Thereafter, in March 1971 Brown, without the knowledge of Associates, brought the vehicle to plaintiff Bruce G. M. Diesel, Inc. (Diesel) to have repairs made on the truck, and Diesel made said repairs, the reasonable cost of which is $2814.07. On March 19, 1971 Associates was still the owner and holder of the security agreement, and the payments due on that agreement had been in default since November 15, 1970. The vehicle was repossessed on March 19 from the Diesel premises by a constable whose services had been engaged by Associates to locate and repossess the vehicle. Diesel made demand upon Associates to return the vehicle; Associates refused and Diesel now sues Associates seeking damages of $2814.07.

The sole issue in this case is whether the Garage Keeper's Lien Act, *N. J. S. A.* 2A:44-21, eliminates the common law artisan's lien when the chattel involved is a motor vehicle. The statute reads:

A garage keeper who shall store, maintain, keep or repair, a motor vehicle or furnish gasoline, accessories or other supplies therefor, at the request or with the consent of the owner or his representative, shall have a lien upon the motor vehicle or any part thereof for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle or for furnishing gasoline, accessories or other supplies therefor, and may, without process of law, detain the same at any time it is lawfully in his possession until the sum is paid.

The lien shall not be superior to, nor affect a lien, title or interest of a person held by virtue of a prior conditional sale or a prior chattel mortgage properly recorded or a prior security interest perfected in accordance with chapter 9 of Title 12A of the New Jersey Statutes.

In *B. C. S. Corp. v. Frick,* 19 *N. J. Misc.* 129 (D. Ct. 1941), the court refused to grant plaintiff a common law artisan lien superior to a prior conditional sale or chattel mortgage, contending that motor vehicles and garage keepers were unknown at common law and that the Garage Keeper's Lien Act was in some respects declaratory of the common law right of lien by an artisan. In support of this holding the court cited *Crucible Steel Co. v. Polack Tyre & Rubber Co.,* 92 *N. J. L.* 221 (E. & A. 1918), which states:

It extends this right of lien to other conditions in business life than those that existed in common law. Thus, for example, it gives the garage keeper a lien for the storing and maintaining of motor vehicles, a present popular means of conveyance unknown to the common law, and which has in a great measure supplanted the horse and wagon and revolutionized the mode of transportation; it gives a right of lien for furnishing gasoline, accessories or other supplies for motor vehicles, for which no right of lien could have properly existed at common law. [at 227]

It is to be noted that the word "repair" was not included in this explanation of the extension of the common law lien.

There has not been a later decision directly on this point. However, the Supreme Court in *Ferrante Equipment Co. v. Foley Machinery Co.,* 49 *N. J.* 432 (1967), did cite the *Frick* case and made several statements implying that that decision would be followed in an appropriate situation. This court believes that the situation at hand is appropriate for a more complete declaration of the law on this matter and, therefore, finds that the right to a common law artisan lien on a motor vehicle is superior to a prior security interest and thus survives the enactment and amendments to *N. J. S. A.* 2A:44–21.

To establish a common law artisan lien, a plaintiff must prove that "the chattel was bailed to him, that he expended his skill and labor in the improvement of the chattel, that he conferred upon it additional value, that he had the expressed or implied consent of the owner to do the work, and that he was employed for the purpose of rendering the service."

*Kalio Universal, Inc. v. B. A. M., Inc.*, 95 *N. J. Super.* 393 (App. Div. 1967). See also, *White v. Smith*, 44 *N. J. L.* 105, 109, 110, 112 (Sup. Ct. 1882).

Except for the existence of *N. J. S. A.* 2A:44–21, it would be undisputed that plaintiff in the instant action is entitled to an artisan lien which, under *N. J. S. A.* 12A:9–310, would rank superior to the security interest held by Associates. It is also clear that the first paragraph of *N. J. S. A.* 2A:44–21 is fully applicable in this case because of the word "repair." However, if the second paragraph is likewise applied in order to subordinate plaintiff's lien to the prior security interest, then the operation of the statute is in direct derogation of the common law. In effect, the statute would be restricting or taking away the common law rights of an artisan, and enlarging or establishing the statutory rights of a secured creditor.

■■ The well recognized maxim of statutory interpretation in New Jersey is that statutes which claim to *establish* a right that was not recognized by the common law will be strictly construed to avoid such asserted change. To effectuate *any* change in the common law the legislative intent to do so must be clearly and plainly expressed. *Carlo v. Okonite-Callender Cable Co.*, 3 *N. J.* 253, 265 (1949); see also, *State v. Western Union Telegraph Co.*, 12 *N. J.* 468, 486 (1953). Moreover, there is always a presumption that the Legislature had no intention to *take away* a common law right. *Blackman v. Iles*, 4 *N. J.* 82, 89 (1950). As a result, the burden is upon defendant Associates to establish its statutory priority.

■■ According to the *Iles* case (at 89), in order to discover the intention of the Legislature when a statute alters or amends the previous law, it is important to ascertain the old law, the mischief and the proposed remedy. See also *Holt v. Akarman*, 84 *N. J. L.* 371 (E. & A. 1913); *Pine v. Okzewski*, 112 *N. J. L.* 429 (E. & A. 1934). The Legislature has the constitutional power to change or modify the common law as long as its purpose in doing so is to attain a permissible

legislative object. *Magierowski v. Buckley*, 39 *N. J. Super.* 534, 558 (App. Div. 1956).

■ The "old law" in respect to the matter at hand involved the common law artisan lien described above. The "mischief" in the old law was that one had to prove that he conferred additional value upon the chattel in his possession. *Beck v. Nutrodynamics, Inc.*, 77 *N. J. Super.* 448, 451 (Cty. Ct. 1962). Consequently, a person in the position of a garage keeper who merely stores, maintains or furnishes gasoline and other supplies for automobiles, without enhancing the value of the vehicle, had no right to a lien under common law.

The "remedy" was found in a statute adopted in 1915 entitled "An Act for the better protection of garage keepers and automobile repairmen." The court in *Crucible Steel Co. v. Polack Tyre & Rubber Co., supra*, 92 *N. J. L.* at 227, held that this original Garage Keeper's Lien Act, which is practically identical to the first paragraph of *N. J. S. A.* 2A:44–21, was enacted in order to enlarge and extend the right of lien to conditions not included at common law, was in line with the natural progress of the law to meet necessities arising from new business conditions, and was peculiarly within the province of the legislative power to determine.

■ The above statute was amended in 1925 to subordinate the statutory created right of lien to prior conditional sales and chattel mortgages, and, in 1961, to perfected security interests. Seeing that the statute not only redeclared the common law, but also created rights not recognized by common law, which would therefore be strictly construed by the judiciary, *Onondaga Truck Lease, Inc. v. Hovell*, 107 *N. J. Super.* 463 (Cty. Ct. 1969), it was perfectly reasonable and proper for the Legislature to expressly restrict these new rights.

On the other hand, the Legislature did not specifically express an intention to similarly restrict the common law artisan lien with respect to motor vehicles. Furthermore, defendants have not presented any permissible legislative objective for subordinating this particular species of artisan

liens to prior security interests. Rather, they rest their argument on the opinion in *Ferrante Equipment Co. v. Foley,* 49 *N. J.* 432 (1967), which case this court finds to support the position that there is no rational basis for the abolition of the artisan lien pertaining to motor vehicles.

The holding in *Ferrante* was that a bulldozer is not a "motor vehicle" within the meaning of the first paragraph of the Garage Keeper's Lien Act and, as a result, defendant there had an artisan lien that was superior to plaintiff's conditional sales contract. In other words, the second paragraph of the statute was found inapplicable. The statement by the court upon which the present defendant relies is:

> For, if it is a motor vehicle, defendant has only a garage keeper's lien that is inferior to plaintiff's. If it is not a motor vehicle, defendant has an artisan's lien that is superior to plaintiffs. [at 438]

The reasoning of the court went to the issue of why bulldozers do not fall within the definition of motor vehicles, and not to the issue of why bulldozers deserve to be treated differently from other motor vehicles, or, from the point of view pertinent to the instant case, why motor vehicles should be treated differently from other chattels subject to common law artisan liens. The *Ferrante* court defined the preferred aatisan lien as follows:

> To achieve the status of such a lien holder with respect to personal property, the artisan, by his labor and skill, must contribute to the improvement of the personal property. If the artisan improves, betters, or *repairs* the property and thus enhances the value of the property by his skill, labor or materials, he acquires the right to a specific lien on the property. He retains this interest in the property until paid. [at 436–437; emphasis added]

Although this court finds itself in agreement with the ultimate result in *Ferrante,* it believes that the Supreme Court's strict interpretation of the first paragraph of *N. J. S. A.* 2A:44–21 in order to arrive at its result made it unnecessary for the court to determine whether the second paragraph

must be applied so broadly that the common law artisan lien on the bulldozer would be subordinated to the conditional sale contract. From a reading of the entire opinion it is evident that the court did not directly concern itself with an interpretation of the second paragraph, or with the precise issue raised in the instant case. The effect of the Supreme Court's decision is not that there are no longer preferred artisan liens with respect to automobiles, but rather that there are no statutory liens with respect to bulldozers "for charges resulting from maintenance or storage of the bulldozer, or such services as gasoline, oil, grease and other maintenance services." (at 437–438).

For the foregoing reasons, this court finds that it was not the intention of the Legislature to subordinate common law artisan liens with respect to motor vehicles to prior conditional sales, chattel mortgages or perfected security interests.

Summary judgment for plaintiff is therefore granted, subject to its proving the enhancement of the value of the property by its skills.